```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION
```

BANK OF THE OZARKS,              *

    Plaintiff,                  *

vs.                              *
                                 CASE NO. 3:13-CV-23 (CDL)
SHERMAN   NATHANIEL   CROCKETT,  *
JR., BARBARA WOMACK CROCKETT,
and JAMES R. GOFF, JR.,          *

    Defendants.                 *

## O R D E R

Defendants Sherman Nathaniel Crockett, Jr. and Barbara Womack Crockett (collectively, the "Crocketts") signed a promissory note which was subsequently assigned to the benefit of Plaintiff Bank of the Ozarks ("Ozarks"). Ozarks filed this action to recover on that promissory note. In response, the Crocketts counterclaimed for breach of contract and attorneys' fees, claiming that Ozarks breached agreements with the Federal Deposit Insurance Corporation ("FDIC") to which they were third-party beneficiaries. Ozarks filed a motion to dismiss the counterclaims, arguing that the Crocketts are not intended third-party beneficiaries to the contract. For the reasons set forth below, the Court grants Ozarks's motion to dismiss (ECF No. 13).

MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss a counterclaim, the Court must accept as true all facts set forth in the counterclaim and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The counterclaim must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the counterclaim must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the counterclaimant's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded [counterclaim] simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

Ozarks and the Crocketts both rely on various documents attached to the Complaint and do not challenge their

2

authenticity. Because the documents are central to the claims and counterclaims in this action, the Court may consider them in ruling on the pending motion to dismiss. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379-80 (11th Cir. 2010).

## DISCUSSION

On August 29, 2008, the Crocketts executed a promissory note in favor of Chestatee State Bank in exchange for a loan to "purchase [their] primary residence." Compl. Ex. A, Promissory Note (Aug. 29, 2008), ECF No. 1-1 at 2.[1] The Crocketts also executed a security deed for that residence in connection with the loan. Compl. Ex. F, Deed to Secure Debt and Security Agreement (Aug. 29, 2008), ECF No. 1-1 at 16-19.[2]

On December 17, 2010, Chestatee State Bank failed, and the FDIC became its receiver. On the same day, the FDIC, as receiver of Chestatee State Bank and in its corporate capacity, entered a purchase and assumption agreement ("P & A Agreement") with Ozarks as the "Assuming Institution" of the failed bank. Compl. Ex. I, P & A Agreement 1, ECF No. 1-1 at 37. The P & A Agreement incorporates and attaches as Exhibit 4.15A an

---

[1] The Crocketts later executed modifications of the promissory note with Ozarks. Compl. Ex. B, Modification of Promissory Note (Sept. 12, 2011), ECF No. 1-1 at 6; Compl. Ex. C, Modification of Promissory Note (July 31, 2012), ECF No. 1-1 at 9.
[2] The Crocketts likewise executed modifications of the security deed with Ozarks. Compl. Ex. G, Modification of Deed to Secure Debt (Aug. 24, 2011), ECF No. 1-1 at 21-25; Compl. Ex. H, Modification of Deed to Secure Debt (July 27, 2012), ECF No. 1-1 at 27-31.

agreement specifically addressing "certain single family residential mortgage loans" known as the Single Family Shared-Loss Agreement ("SFS Agreement"). *Id.* at 75, Ex. 4.15A, ECF No. 1-2 at 4. This SFS Agreement contains certain obligations to "undertake reasonable and customary loss mitigation efforts" to modify certain single family residential loans in accordance with any federal modification program when that loan is in default or when the default is reasonably foreseeable. *Id.* at 79, Ex. 4.15A art. 2.1(a)(i), ECF No. 1-2 at 8. The Crocketts contend that Ozarks erroneously listed their loan as "commercial" and "non-single family," *id.* at 50 & Schedule 4.15B, ECF No. 1-1 at 86-87; and therefore, Ozarks failed to undertake any modification efforts before seeking to collect on the Crocketts' single family residential loan. By doing so, Ozarks breached its obligations under article 2.1(a)(i) of the SFS Agreement according to the Crocketts' counterclaim, which alleges that they are third-party beneficiaries of the agreement between Ozarks and the FDIC.

The Crocketts' argument ignores significant provisions in the P & A Agreement which make it clear that they are not intended beneficiaries of the agreements between Ozarks and the FDIC. The P & A Agreement includes the following language with respect to third parties:

> Except as otherwise specifically provided in this Agreement, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the Receiver, the Corporation and the Assuming Institution any legal or equitable right, remedy or claim under or with respect to this Agreement or any provisions contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation and the Assuming Institution and for the benefit of no other Person.

*Id.* at 41 art. 13.5, ECF No. 1-1 at 77. Similarly, the SFS Agreement disclaims liability to third parties:

> **No Third Party Beneficiary.** This Single Family Shared-Loss Agreement and the Exhibits hereto are for the sole and exclusive benefit of the parties hereto and their respective permitted successors and permitted assigns and there shall be no other third party beneficiaries, and nothing in this Single Family Shared-Loss Agreement or the Exhibits shall be construed to grant to any other Person any right, remedy or Claim under or in respect of this Single Family Shared-Loss Agreement or any provision hereof.

*Id.* at 89, Ex. 4:15A art. 6.4, ECF No. 1-2 at 18.

It is undisputed that "only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). A third party who incidentally benefits from a contract has no right to sue to enforce it. *Id.* at 932-33. Because government contracts often benefit the public, third parties to a government contract must overcome the presumption that they are merely incidental

beneficiaries by showing that the parties *clearly intended* to permit that class of third parties to sue to enforce the terms of the government contract.  *Id.* at 933 (citing *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997), and *Beckett v. Air Line Pilots Ass*'n, 995 F.2d 280, 288 (D.C. Cir. 1993)).  When a government contract expressly disclaims any intent to create third-party beneficiaries except as otherwise specifically provided, it becomes "significantly more difficult" to demonstrate the requisite "clear intent." *Id.*

The Crocketts contend that, despite the P & A Agreement's express disclaimer, the Crocketts are intended third-party beneficiaries because the SFS Agreement specifically provides for obligations "intended to protect single-family residential purchase money security interest borrowers [like the Crocketts] from default and risk of losing their homes."  Defs.' Resp. in Opp'n to Pl.'s Mot. to Dismiss Countercl. 11, ECF No. 16. However, the SFS Agreement clearly and unambiguously disclaims any third-party beneficiary liability.  P & A Agreement 89, Ex. 4:15A art. 6.4, ECF No. 1-2 at 18.  The present record establishes as a matter of law that the Crocketts are not intended third-party beneficiaries of the agreements between Ozarks and the FDIC.  Therefore, they have no claim for an

alleged breach of an agreement to which they are not parties. *See Interface*, 704 F.3d at 933-34 (remanding with instructions to dismiss breach of contract claim because claimant was not intended third-party beneficiary of purchase and assumption agreement containing express disclaimer).

Accordingly, the Court must dismiss the Crocketts' breach of contract counterclaim.  The Court must likewise dismiss the Crocketts' counterclaim for attorneys' fees pursuant to O.C.G.A. § 13-6-11.  *See United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147, 475 S.E.2d 601, 602 (1996) ("A prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim.").

## CONCLUSION

For the reasons stated above, the Court grants Ozarks's motion to dismiss the Crocketts' counterclaims (ECF No. 13).

IT IS SO ORDERED, this 31st day of July, 2013.

S/Clay D. Land<br>
CLAY D. LAND<br>
UNITED STATES DISTRICT JUDGE