```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF GEORGIA
                          ATHENS DIVISION
```

| | | |
|---|---|---|
| BANK OF THE OZARKS, | * | |
|     Plaintiff, | * | |
| vs. | * | CASE NO. 3:13-CV-23 (CDL) |
| JAMES R. GOFF, JR., | * | |
|     Defendant. | * | |

## O R D E R

Defendant James R. Goff, Jr. guaranteed a loan made by the Chestatee State Bank to Sherman Nathaniel Crockett, Jr. and Barbara Womack Crockett. After Chestatee State Bank failed, Plaintiff Bank of the Ozarks assumed the loan, including Goff's guaranty, pursuant to its agreement with the Federal Deposit Insurance Corporation to assume certain assets and liabilities of the failed bank. The Crocketts defaulted on the loan, and Goff has refused to honor his obligations under the guaranty. He admits that he is in default on the guaranty, but he maintains that he should be excused from liability because Ozarks improperly increased his risk as guarantor. Ozarks responds that Goff expressly waived his "increased risk" defense in the guaranty agreement that he signed. Ozarks now seeks summary judgment on its claim against Goff pursuant to the

guaranty. For the reasons explained in the remainder of this Order, Ozarks's motion (ECF NO. 30) is granted.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

On August 29, 2008, the Crocketts executed a promissory note in favor of Chestatee State Bank in the principal amount of $266,221.25. The Note obligates the Crocketts to timely pay the lender or its successors and assigns all amounts due under the Note, including principal, interest, other accrued charges, collection costs, and attorneys' fees of "15 percent of the

---

[1] Although Goff requested oral argument (ECF No. 36), the Court finds that the issues to be decided are clear from the briefing and that no hearing is necessary.

principal and interest then owed, plus court costs." Kundrat Aff. Ex. 1, Promissory Note 1-2, ECF No. 30-2 at 15-16. Goff executed two documents (collectively, the "Guaranty") "absolutely and unconditionally" guaranteeing all amounts owed by the Crocketts, including an "UNLIMITED" principal amount "plus accrued interest, attorneys' fees and collection costs . . . and all other amounts agreed to be paid under all agreements evidencing the debt and securing the payment of the debt." Kundrat Aff. Exs. 4-5, Guaranty, ECF No. 30-2 at 25-27. The Guaranty signed by Goff contains the following waivers:

> No modification of this agreement is effective unless in writing and signed by you and me, except that you may, without notice to me and without the addition of a signed writing or my approval . . . (12) renew, extend, refinance or modify the borrower's debt on any terms agreed to by you and the borrower (including, but not limited to, changes in the interest rate or in the method, time, place or amount of payment) without affecting my obligation to pay under this guaranty.
>
> . . . I waive presentment, demand, protest, notice of dishonor, and notice of acceptance of this guaranty. I also waive, to the extent permitted by law, all notices, all defenses and claims that the borrower could assert, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full. You may without notice to me and without my consent, enter into agreements with the borrower from time to time for purposes of creating or continuing the borrower's debt as allowed by this guaranty.

*Id.*

Chestatee State Bank failed before the Crocketts paid back the loan. The FDIC negotiated a Purchase and Assumption Agreement ("P & A Agreement") with Ozarks which resulted in Ozarks assuming certain assets and liabilities of Chestatee State Bank, including the Crocketts' Note and the Goff Guaranty. Goff does not dispute that the Crocketts defaulted on the Note and as of October 25, 2013 owe Ozarks $209,334.91 in principal, $10,226.07 in interest continuing to accrue at $39.48 per day, $1,795.00 in late charges, and attorneys' fees of fifteen percent of the principal and interest due. Pl.'s Statement of Material Facts ¶ 24, ECF No. 30-1; Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 24, ECF No. 32. Goff also admits that he is in default on the Guaranty. *Id.* ¶ 14.

## DISCUSSION

Ozarks seeks summary judgment on its action to enforce Goff's Guaranty of the Crocketts' Note. It is undisputed that the Crocketts' Note and the Goff Guaranty were validly executed, that the Crocketts are in default on the Note, and that Goff has refused to pay the Note obligation pursuant to his Guaranty. Therefore, Goff is liable on the Guaranty unless he can establish a defense for his non-payment. *Fielbon Dev. Co. v. Colony Bank*, 290 Ga. App. 847, 850, 660 S.E.2d 801, 805 (2008).

Goff argues that he should be discharged of his guarantor obligation because Ozarks increased his risk by increasing the

4

Crocketts' monthly payments and not offering further modifications. See O.C.G.A. § 10-7-22 ("Any act of the creditor . . . which injures the surety or increases his risk or exposes him to greater liability shall discharge him."). Ozarks responds that Goff waived any right to object to an increase in his risk by the clear language of his Guaranty. "A guarantor may consent in advance to a course of conduct that would otherwise result in his discharge" and waive defenses that would otherwise be available to a guarantor. *Baby Days, Inc. v. Bank of Adairsville*, 218 Ga. App. 752, 755, 463 S.E.2d 171, 174 (1995); *accord Panasonic Indus. Co. v. Hall*, 197 Ga. App. 860, 861, 399 S.E.2d 733, 734 (1990). Goff does not dispute that the language of his Guaranty permitted Chestatee State Bank and/or Ozarks to modify the underlying debt without notifying him. Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. 14, ECF No. 31. And any argument to the contrary would be frivolous. The Guaranty clearly provides that Goff unconditionally guarantees an *unlimited* amount of the Crocketts' debt to the bank and that Goff consents in advance to modifications to the debt without providing him notice or obtaining his approval. Guaranty 1. Goff has waived the "increased risk" defense he now seeks to assert. See *Fielbon*, 290 Ga. App. at 854, 660 S.E.2d at 807-08 (holding as a matter of law that guarantor waived increased risk defense based on similar language in guaranty).

5

To the extent that Goff seeks to avoid his obligations under the Guaranty based on Ozarks's alleged failure to treat the Crocketts' loan as residential and thus offer modifications as part of the residential loan program contained in the P & A Agreement between the FDIC and Ozarks, that argument is also unpersuasive. As explained previously, Goff has waived this defense. But even if he had not, he has no legal basis for relying on an agreement between the FDIC and Ozarks. Goff's argument relies on the alleged improper classification of the Crocketts' loan as commercial instead of residential according to the terms of the P & A Agreement between Ozarks and the FDIC. *See* Def.'s Resp. 3-7 (summarizing the P & A Agreement's terms as to residential and commercial loans then arguing that the Bank "refuses to modify the . . . residential loan pursuant to the Agreement, increasing Mr. Goff's risk"); *see also* Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 29 (explaining that Ozarks increased Goff's risk under the guaranty by raising the interest rate and refusing to modify the loan as required by the P & A Agreement). The Court has previously ruled that the P & A Agreement clearly and unambiguously disclaimed the creation of any rights, remedies, or claims by third parties. July 31, 2013 Order 4-7, ECF No. 22. For the same reasons, Goff cannot base his affirmative defense of increased risk on an alleged obligation of Ozarks pursuant to the P & A Agreement.

Goff is in default on his Guaranty and has no valid affirmative defenses to Ozarks's claim. Pursuant to the terms of his Guaranty, Goff is liable for the total amount of $257,967.69.[2]

CONCLUSION

For the reasons set forth above, Ozarks's Motion for Summary Judgment (ECF No. 30) is granted.[3] The Clerk shall enter judgment in favor of Bank of the Ozarks against James R. Goff, Jr. in the amount of $257,967.69.

IT IS SO ORDERED, this 14th day of January, 2014.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[2] This figure represents $209,334.91 in principal, $13,423.95 in interest (calculated as $10,226.07 up to October 25, 2013 plus eighty-one days of interest from October 25, 2013 to today at $39.48 per diem), $1,795.00 in late charges, and $33,413.83 in attorneys' fees calculated as fifteen percent of the principal and total interest owed.

[3] The Court notes that Ozarks abandons its unjust enrichment claim. Pl.'s Mot. For Summ. J. 1 n.1, ECF No. 30. Therefore, Goff's motion for partial summary judgment on this claim (ECF No. 34) is terminated as moot.